UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JORGE CORONEL on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br>ADVO INCORPORATED, S. SCOTT HARDING, and JEFFREY E. EPSTEIN,<br><br>                    Defendants. | Civil Action No. _____<br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><br><br><br><br>SEPTEMBER 15, 2006 |

## CLASS ACTION COMPLAINT

Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff and Plaintiff's counsel, based upon the investigation undertaken by Plaintiff's counsel, which investigation included analysis of news articles and reports, public filings, press releases and other matters of public record.

## NATURE OF THE COMPLAINT

1.     This is a securities class action on behalf of all persons who purchased or otherwise acquired the publicly-traded securities of ADVO Inc. ("ADVO" or the "Company") during the period of April 25, 2006  through August 30, 2006 inclusive, (the "Class Period") under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and the regulations promulgated thereunder by the SEC, including Rule 10b-5.  As discussed in more detail below, during the Class Period, Defendants issued quarter after quarter of strong financial results. Defendants also regularly forecasted strong financial results for future quarters.

2.     Defendants' rosy forecasts and strong revenue growth announcements enabled ADVO to attract an acquisition offer from a Michigan-based marketing services company, Valassis Communications Inc. ("Valassis").   The acquisition was announced on July 6, 2006, at $37 per share.  In response to the news, the price of ADVO stock rose dramatically.

3.     Unbeknownst to the investing public, Defendants were withholding material information regarding ADVO's material internal control deficiencies and the fact that operating income was materially off forecast.  On August 30, 2006, Valassis filed a suit in Delaware chancery court, seeking to rescind its merger offer.  The complaint alleged that ADVO management failed to disclose material adverse changes at ADVO and misrepresented its financial results to both Valassis and the public.  In response to this news, ADVO stock plummeted, dropping over from $36.80 to $28.59 on unusually large trading volumes of 11 million shares traded.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.  The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and the rules and regulations promulgated thereunder by the SEC, including Rule 10b-5 (17 C.F.R. §240.10b-5).

5.     Venue is proper in this district pursuant to Section 27 of the Exchange Act (28 U.S.C. §1391(b)).  Many of the acts and transactions giving rise to the violations of law complained of herein, including the preparation and dissemination to the investing public of false and misleading information, occurred in this district.  In addition, ADVO maintains its principal executive offices in this district.

6.    In connection with the acts, conduct and other wrongs complained of herein, Defendants used the means and instrumentalities of interstate commerce, including the mails, telephone and the facilities of national securities exchanges.

## THE PARTIES

### A.    Plaintiff

7.    Plaintiff, Jorge Coronel, purchased ADVO common stock during the Class Period and sustained losses, as evidenced by his certification attached hereto.

### B.    Corporate Defendant

8.    Defendant ADVO's principal offices are located at One Targeting Centre Windsor, CT 06095-2639.  The Company provides the following description of itself in press releases:

> ADVO, Inc., a direct mail media company, engages in soliciting and processing printed advertising from retailers, manufacturers, and service companies in the United States and Canada. It offers direct mail marketing products and services, such as shared mail, which provides the addresses of the households receiving the mail packages; and sorts, processes, and transports the advertising material for ultimate delivery primarily through the United States Postal Service (USPS).

### C.    Individual Defendants

9.    The Individual Defendants, at all times relevant to this action, served in the capacities listed below and received substantial compensation:

| Name | Position |
| --- | --- |
| S. Scott Harding | Chief Executive Officer (principal executive officer) |
| Jeffrey E. Epstein | Chief Financial Officer |

## CLASS ACTION ALLEGATIONS

10.    Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the

Federal Rules of Civil Procedure on behalf of a class (the "Class") consisting of all persons who

purchased the publicly-traded securities of ADVO  between April 25, 2006 and August 30, 2006,

inclusive.  Excluded from the Class are the Defendants herein, members of each Individual

Defendant's immediate family, any entity in which any Defendant has a controlling interest, and

the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in

interest or assigns of any such excluded party.

11.    Because ADVO has millions of shares of common stock outstanding, and because

the Company's common stock was actively traded on the NYSE market under the symbol "AD"

throughout the Class Period, members of the Class are so numerous that joinder of all members

is impracticable.  While the exact number of Class members is unknown at this time and can

only be determined by appropriate discovery, Plaintiff believes that Class members number at

least in the thousands and that they are geographically dispersed.

12.    Plaintiff's claims are typical of the claims of the members of the Class, because

Plaintiff and all of the Class members sustained damages arising out of Defendants' wrongful

conduct complained of herein.

13.    Plaintiff will fairly and adequately protect the interests of the Class members and

has retained counsel who are experienced and competent in class and securities litigation.

Plaintiff has no interests that are contrary to or in conflict with the other members of the Class

Plaintiff seeks to represent.

14.    A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, as

the damages suffered by individual members of the Class may be relatively small, the expense

and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs suffered. There will be no difficulty in the management of this action as a class action.

15.    Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members in that Defendants have acted on grounds generally applicable to the entire Class. The questions of law and fact common to the Class include:

a.    whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.    whether the Company's publicly disseminated releases and statements during the Class Period omitted and/or misrepresented material facts and whether Defendants breached any duty to convey material facts or to correct material facts previously disseminated;

c.    whether Defendants participated in and pursued the fraudulent scheme or course of business complained of;

d.    whether Defendants acted willfully, with knowledge or recklessly, in omitting and/or misrepresenting material facts;

e.    whether the market prices of ADVO common stock during the Class Period were artificially inflated due to the material nondisclosures and/or misrepresentations complained of herein; and

f.    whether the members of the Class have sustained damages and, if so, what is the appropriate measure of damages.

## SUBSTANTIVE ALLEGATIONS

### *Background: ADVO Struggles to Raise Its Lagging Stock Price*

16.    During much of 2005, ADVO stock soared to new heights, reporting record revenues and profitability.  For example, in January 2005, defendants issued a press release reporting strong increases in revenue:

> January 20, 2005 – ADVO, Inc. (NYSE: AD) today reported that revenue for its first fiscal quarter ended December 25, 2004 grew to $350.1 million, increasing $47.7 million, or 15.8%, over the prior year quarter. Diluted E.P.S. for the quarter was $0.26 versus $0.37 in the prior year period.

17.    Defendant Harding noted the strong results, stating:

> Scott Harding, ADVO's Chief Executive Officer, stated, "Our results demonstrate our continuing strong sales momentum and success of our growth strategy. We delivered revenue growth this quarter, which was well in excess of the industry, with increases across virtually all of our top categories and geographies. Additionally, our new growth platforms are performing very well. In fact, in Southern California and Pittsburgh, two markets with our most significant expansions, we generated revenue growth of 28.1% and 15.9%, respectively. Given our first quarter results, we remain comfortable with our ability to achieve full-year fiscal 2005 E.P.S. in line with previous guidance of $1.80-1.85."

18.    In response to the Company's positive statements, the stock traded at over $37 per share during February 2005.  However, by November of 2005, the stock had fallen to around $26 per share, and continued to trade in that range.  Defendants knew that because the Company could not internally generate sufficient revenues to boost the stock price, the best option to increase the value of their own holdings of ADVO stock was to seek an extraordinary event, such as a merger or acquisition.

### *The Class Period Begins*

19.    The Class period begins on April 25, 2006.  On that date, defendants reported revenue for the second quarter ending March 25, 2006.  The press release stated:

6

ADVO, Inc. (NYSE: AD) today reported that revenue for its second fiscal quarter ended March 25, 2006 was $354.8 million versus $338.8 million in the prior year quarter and diluted E.P.S. was $0.17 versus $0.33 in the prior year quarter. These results are consistent with the estimates provided by the Company on April 17. The Company's second quarter fiscal 2005 E.P.S. did not include incremental expenses of $0.02 for the expensing of stock options as the result of the adoption of FAS123(R) in fiscal 2006. The Company's shared advertising packages grew 3.3% to 1.07 billion. Pieces per package increased 2.7% to 8.4. Total shared advertising piece volumes grew 6.0% to 8.96 billion. Revenue per piece declined 3.7% due to declines in ShopWise® wrap revenue and continued circular lightweighting in the grocery sector. Distribution expense as a percent of revenue increased 2.1 percentage points, print and paper expense and other operations expense each improved 0.1 percentage points, resulting in a decrease in gross margin as a percentage of revenue of 1.9 percentage points. SG&A for the second quarter increased $5.1 million, or 8.5%, driven by planned expenses related to the Company's new order entry system, incentive compensation expense, and the change in accounting rules related to stock option expense. Separately, the Company today announced two corporate actions aligned with driving profitable growth: 1) the consolidation and closure of its Memphis production facility and 2) the outsourcing of its graphics print production services. Specifically, as a result of continued improvements in its production capabilities, the Company will absorb work currently handled in Memphis into four other facilities.

In addition, the Company will be sourcing its graphics print production work to an outside supplier who specializes in providing these services. This change will result in significant annual cost savings for ADVO, and will improve the turnaround time to fulfill client orders. In total, these actions will result in savings of $7 million annually, with savings from the Memphis facility beginning in September-October, 2006 and the majority of the savings from graphics print beginning in the October, 2006-January, 2007 time-frame. The Company expects to incur charges primarily related to severance totaling approximately $4 million over the next three fiscal quarters beginning in the third quarter of fiscal 2006. The combination of these two initiatives, and the new Southern California joint distribution agreement the Company announced on April 17, will yield savings of approximately $18-$20 million on an annual basis.

20.    On July 6, 2006, defendants announced that Michigan-based Valassis, a marketing services company, had agreed to acquire ADVO.  The press release touting the acquisition stated:

**Livonia, Mich., and Windsor, Conn., July 6, 2006: Valassis (NYSE: VCI),** a leading company in marketing services, announced today that it has entered into a definitive merger agreement with **ADVO (NYSE: AD),** the nation's leading

direct mail media company, under which it will acquire all of the outstanding common shares of ADVO stock for $37 per share in cash in a merger. The fully financed transaction is valued at approximately $1.3 billion (on a diluted basis), including approximately $125 million in existing ADVO debt which Valassis expects to refinance. This acquisition will create the nation's largest integrated media services provider. The combination will feature the most comprehensive product and customer offering in the industry serving 20,000 advertisers worldwide, including 94 of the top 100 advertisers in the United States. The combined company will be positioned to capture growth across the expanded product and service portfolio, delivering customized, targeted solutions on a national, regional, zip code, sub-zip code and household basis. ADVO's shared mail distribution business penetrates up to 114 million households, or 90% of U.S. homes, adding substantially to Valassis' weekly newspaper distribution of over 60 million households.

The combined company will have 7,900 employees with operations in nine countries. "Together, Valassis and ADVO will be well positioned for growth as a more diversified company with complementary capabilities, product offerings and clients," said Alan F. Schultz, Valassis Chairman, President and CEO. "We will have an unsurpassed ability to deliver value and savings to consumers where, when and how they want – and to do so with advanced analytics and targeting capabilities that maximize advertisers' return on investment. This combination is a first in the media services industry and uniquely positions us to capture growth by anticipating the needs of the marketplace and evolving to meet them." S. Scott Harding, ADVO Chief Executive Officer, added, "Advertisers' needs are becoming increasingly sophisticated and require solutions that are both scalable and customized. Our new company will deliver on these requirements with an unrivaled portfolio of products, leadership across multiple media platforms, proven targeting expertise and unmatched reach. In today's media world, that is an undeniably attractive combination." Mr. Schultz continued, "We are very pleased to welcome ADVO into the Valassis family. This is an exciting opportunity for employees, clients and shareholders."

21.    The July 6, 2006 press release added:

**Transaction Overview:** Valassis expects the transaction to be accretive in 2007 on a cash EPS basis, excluding estimated amortization of intangibles arising from purchase accounting. Annual cost synergies of approximately $40 million are anticipated to be achieved beginning in 2007. The combined company expects revenue of approximately $2.65 billion in calendar year 2007. EBITDA in 2007 for the combined company is anticipated to be between $305 million and $315 million. The combined company will be headquartered in Livonia, Mich., and maintain a substantial presence in Windsor, Conn. Mr. Schultz will remain Chairman, President and Chief Executive Officer and Mr. Robert L. Recchia will remain Chief Financial Officer. Mr. Harding will serve as a consultant to the

8

combined company. The Valassis Board of Directors will remain intact. The merger agreement, which has been approved by the Boards of Directors of both companies, remains subject to the approval of ADVO shareholders, regulatory approvals and other customary conditions. The transaction is expected to close in three to four months.

22.    In response to the news announcing the acquisition, ADVO stock soared from $24.19 per share on July 5th, 2006 to $35.28 per share on July 6, 2006, on unusually large volumes of over 18 million shares traded – vastly in excess of the stock's average trading volumes of slightly over 1 million shares per day.

23.    On August 2, 2006, defendants reported revenue for the third quarter of 2006. The press release stated:

> August 2, 2006 – ADVO, Inc. (NYSE: AD) today reported that revenue for its third fiscal quarter ended July 1, 2006 was $386.8 million versus $353.6 million in the prior year quarter, and operating income was $12.7 million versus $22.4 million in the prior year quarter. Diluted E.P.S. was $0.22 versus $0.41 in the prior year quarter. The third fiscal quarter of 2006 contained a planned extra week versus the prior year period due to the Company's 52/53 week fiscal year. Both this year's third quarter and the prior year's third quarter contained certain non-recurring costs. Included in the third fiscal quarter of 2006 was a charge of $0.03 in E.P.S. related to the previously announced closure of its Memphis production facility, the new newspaper agreement in Southern California, and the outsourcing of its graphics print services. The Company also incurred expenses of approximately $0.05 in E.P.S. related to its anticipated merger with Valassis. In addition to these nonrecurring costs, the Company incurred additional expenses of $0.03 in E.P.S. year-over-year related to the adoption of FAS123(R).
>
> The prior year period E.P.S. included a charge of $0.07 per share related to an organizational realignment. The chart below details third quarter E.P.S. impacts for both years. Third quarter fiscal 2006 distribution expense and print and paper expense as a percent of revenue increased 3.2 percentage points and 0.3 percentage points, respectively. All other costs of sales netted no change as a percent of revenue, resulting in a gross margin decrease of 3.5 percentage points of revenue. SG&A for the third quarter increased $4.4 million, or 6.8%, which was a 0.4 percentage point improvement as a percent of revenue. Third quarter fiscal 2006 operating income as a percent of revenue declined 3.1 percentage points versus the prior year period. The Company's margins were negatively impacted by costs associated with the transition to the new order entry system during the quarter, which the Company estimates to be in the range of $0.06-$0.09 in E.P.S. The Company's shared advertising packages grew 8.9% to 1.1

billion (up 2.7% after adjusting the fiscal calendar to the comparable prior year period). Pieces per package were 8.4, down 0.2%.

24.    Commenting on the pending acquisition, defendant Harding stated:

We have successfully converted to our new order entry system during the quarter. This is an accomplishment that has been four years in the making. I am proud of the tremendous efforts given by ADVO associates across the organization to overcome the normal challenges associated with the implementation of an enterprise wide system and successfully go live. As we put this system transition behind us, we are confident in our ability to gain focus and momentum in our core business operations as we close fiscal 2006 and move into fiscal 2007.

We are working closely with Valassis to develop and, after closing, execute a successful integration of the two companies. This merger will create a diversified company, combining complementary capabilities, product and service offerings and clients. The combined Company will be well positioned for future growth with an expanded product portfolio which can serve the diverse media needs in today's marketplace. We are excited about the opportunities this will bring for employees, shareholders and clients as we create the nation's largest integrated media solutions provider.

### *The Truth Is Revealed*

25.    On August 30, 2006, investors were shocked by the news that Valassis announced that it had sued to rescind its agreement to buy Advo.  The lawsuit filed by Valassis alleges that the direct mail company "materially misrepresented the financial health of the company and failed to reveal internal control deficiencies," Valassis claimed, in a filing with Delaware Chancery Court Wednesday, that Advo provided "materially false financial information" and "withheld material information" at a time when the operating income was materially off forecast. It also alleged Advo executives knew of, but failed to disclose, "significant internal control deficiencies associated with Advo's enterprise-wide, order-to-cash system."

26.    In response to the news that ADVO had been materially misrepresenting its financial results and projections, the shares lost as much as 50% on August 30, 2006.  By August

31, 2006, Advo shares sank from $36.80 to $28.59, on unusually large trading volumes of 11 million shares.

27.    As now revealed, defendants made false representations to Valassis in order to induce Valassis to enter into an agreement to purchase ADVO at an inflated price.  As a direct consequence of misrepresenting ADVO's financial status to Valassis, defendants also perpetrated a fraud on the investing public, announcing that the Company had generated strong revenue growth despite its materially declining financial condition.  As now revealed, during the Class Period, defendants knew but failed to disclose that: (a) ADVO was suffering from serious implementation issues with the launch of its new order delivery system, known as the service delivery redesign project ("SDR") which caused shipping disruptions, delayed customer invoicing, and problems entering and processing customer orders; (b) ADVO's financial projections provided to investors during the Class Period were false and without basis.

## SCIENTER ALLEGATIONS

28.    As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated by or in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding ADVO and its business practices, their control over and/or receipt of ADVO's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning PGIC, were active and culpable participants in the fraudulent scheme alleged herein.  Defendants knew and/or recklessly

disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this Complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

## STATUTORY SAFE HARBOR

29.     The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. None of the statements pleaded herein that were forward-looking statements were identified as "forward-looking statements" when made. Nor was it stated that actual results "could differ materially from those projected." Nor were the forward-looking statements pleaded accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from the statements made therein. Defendants are liable for the forward-looking statements pleaded because, at the time each of those forward-looking statements was made, the speaker knew the forward-looking statement was false and the forward-looking statement was authorized and/or approved by an executive officer of ADVO who knew that those statements were false when made.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD ON THE MARKET DOCTRINE

30.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

a.     Defendants made public misrepresentations or failed to disclose facts during the Class Period;

b.     The omissions and misrepresentations were material;

      c.     ADVO securities traded in an efficient market;

      d.     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

      e.     Plaintiff and the other members of the Class purchased ADVO securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

31.    At all relevant times, the market for ADVO securities was an efficient market for the following reasons, among others:

      a.     ADVO securities were listed and actively traded during the Class Period on the NYSE, an open, highly efficient and automated market.

      b.     As a regulated issuer, ADVO regularly made public filings, including its Forms 10-K, Forms 10-Q and related press releases, with the SEC.

      c.     ADVO regularly communicated with public investors via established market communication mechanisms, including the Company's website, regular disseminations of press releases on the major news wire services, and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

32.    As a result, the market for ADVO securities digested current information regarding the Company from the publicly available sources described above and reflected such information in the prices of ADVO's securities.  As would be expected where a security is traded in an efficient market, material news concerning ADVO's business had an immediate effect on the market price of ADVO's securities, as evidenced by the rapid decline in the market price in the immediate aftermath of ADVO's corrective disclosures as described herein.  Under these circumstances, all purchasers of ADVO's securities during the Class Period suffered similar

injury due to the fact that the price of ADVO securities was artificially inflated throughout the

Class Period.  At the times they purchased or otherwise acquired ADVO's securities, Plaintiff

and other members of the Class were without knowledge of the facts concerning the wrongful

conduct alleged herein and could not reasonably have discovered those facts.  As a result, the

presumption of reliance applies.  Plaintiff will also rely, in part, upon the presumption of reliance

established by a material omission.

**COUNT I**

**FOR VIOLATIONS OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5
PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS.**

33.    Plaintiff repeats the allegations set forth in paragraphs above as though fully set

forth herein.  This claim is asserted against ADVO and the Individual Defendants.

34.    During the Class Period, Defendants carried out a plan, scheme and course of

conduct which was intended to, and did: (i) deceive the investing public, including Plaintiff and

other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of

ADVO common stock; and (iii) cause Plaintiff and other members of the Class to purchase

ADVO stock at artificially inflated prices during the Class Period.  In furtherance of this

unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein.

35.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made

untrue statements of material fact and/or omitted to state material facts necessary to make the

statements not misleading; and (c) engaged in acts, practices and a course of business which

operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort

to maintain artificially high market prices for ADVO common stock in violation of Section 10(b)

of the Exchange Act and Rule 10b-5.  Defendants are sued as primary participants in the

wrongful and illegal conduct charged herein, and as controlling persons of PGIC, as alleged below.

36.    In addition to the duties of full disclosure imposed on Defendants as a result of their affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, they had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. § 210.01 *et seq.*) and S-K (17 C.F.R. § 229.10 *et seq.*) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and performance so that the market prices of the Company's publicly-traded securities would be based on truthful, complete and accurate information.

37.    Defendants, individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, performance, operations and future prospects of ADVO as specified herein. These Defendants employed devices, schemes and artifices to defraud, while in possession of material, adverse, non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of ADVO's value and performance and substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about ADVO and its business, operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein,

and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of ADVO securities during the Class Period.

38.    Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) Individual Defendants were all high-level executives and/or directors at the Company during the Class Period; (ii) each of these Defendants, by virtue of his responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with each other and were advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) these Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

39.    Defendants had actual knowledge of the severe misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing ADVO's operating condition, business practices and future business prospects from the investing public and supporting the artificially inflated price of its stock. As demonstrated by their overstatements and misstatements of the Company's financial condition and performance throughout the Class Period, the Individual Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were

16

reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

40.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of ADVO's common stock was artificially inflated during the Class Period.  Unaware of the fact that the market price of ADVO's shares was artificially inflated, and relying (directly or indirectly) on Defendants' false and misleading statements, or on the integrity of the market in which the securities are traded, and/or on the absence of material, adverse information known to or recklessly disregarded by Defendants (but not disclosed to the public) during the Class Period, Plaintiff and the other members of the Class acquired ADVO common stock during the Class Period at artificially high prices and were damaged thereby.

41.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were unaware of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known of the true performance, business practices, future prospects and true value of PGIC, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have acquired their ADVO securities during the Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

42.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

43.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their acquisition of the Company's securities during the Class Period.

## COUNT II
## FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT
## AGAINST INDIVIDUAL DEFENDANTS

44.    Plaintiff repeats the allegations set forth in the paragraphs above as if set forth fully herein.  This claim is asserted against the Individual Defendants.

45.    Individual Defendants were, and acted as, controlling persons of ADVO within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high level positions with the Company, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, these Defendants had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the dissemination of the various statements which Plaintiff contends are false and misleading.  Individual Defendants were provided with or had unlimited access to the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be false and misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.    In addition, Individual Defendants had direct involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

47.    As set forth above, Individual Defendants violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their controlling positions, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and

proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for judgment as follows:

a.    Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b.    Awarding Plaintiff and the other members of the Class damages in an amount which may be proven at trial, together with interest thereon;

c.    Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs;

d.    Ordering an accounting of Defendants' insider trading proceeds;

e.    Awarding preliminary and permanent injunctive relief in favor of Plaintiffs and the Class against Defendants, including an accounting and the imposition of a constructive trust and/or an asset freeze on Defendants' insider trading proceeds; and

f.    Such other relief as this Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

By: _____

Andrew M. Schatz (ct 00603)
Jeffrey S. Nobel (ct 04855)
Nancy A. Kulesa (ct 25384)
SCHATZ & NOBEL P.C.
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06103
Tel.: 860-493-6292
Fax: 860-493-6290


SAXENA WHITE P.A.
Maya S. Saxena
Joseph E. White III
2424 N. Federal Highway
Boca Raton, FL 33431
Tel: 561-394-3399
Fax: 561-394-3382


**Attorneys for Plaintiff**

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

Jorge Coronel, declares the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.      I have reviewed the Advo Incorporated ("Advo") complaint prepared by The Brualdi Law Firm and Saxena White P.A., whom I designate as my counsel in this action for all purposes.

2.      I did not acquire Advo stock at the direction of plaintiff's counsel or in order to participate in any private action under the federal securities laws.

3.      I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4.      I will not accept any payment for serving as a representative party beyond my *pro rata* share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the court pursuant to law.

5.      I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years.

6.      I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is unaffected by my decision to serve as a representative party.

7.      During the Class Period I have made the following transactions in Advo and will provide records of those transactions upon request:

| No. of Shares | Buy/Sell | Date | Price Per Share |
|---|---|---|---|
| 50 | Buy | 8/16/06 | $36.74 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| No. of Shares | Buy/Sell | Date | Price Per Share |
|---|---|---|---|
| | | | |
| | | | |

Please use and attach additional pages if necessary.

I declare under penalty of perjury that the foregoing is true and correct

Executed this 11th day of September, 2006

_____
Jorge Coronel